number 07-4613. Mr. Foster and Mr. Kells. Thank you, Your Honor. May it please the court. My name is David Foster, and I represent the appellant Mercy Santos in this case. I would like to reserve five minutes for rebuttal. Now, were you the attorney that initially the family approached? Yes. The question is, so the accident took place on what, December 20, well, I'm sorry, they found out how severe this was on December 22, 2002. Correct. And you brought a case in two and a half years later, but you hadn't brought it previously in state court. That's correct. We brought it initially in state court in May of 2002. But you hadn't brought it within two years in state court to get the additional six months under review. That's correct. And in the initial, I mean, I not sympathize, I empathize with the situation you were in, but because I don't think I would have known that these employees could invoke the Federal What do you normally, what's the process that one normally goes about? I mean, we know about it. We know it exists because it's happened in other cases. What do you normally do? Well, actually, it hasn't happened in other cases that I've had, quite frankly. It never happened to me. I can tell you I shuddered when I read this because I used to do plaintiff's cases. I've been practicing for 32 years, 20 plus years doing plaintiff's personal injury cases, which involved medical malpractice cases. In the first 10 years I got involved in medical malpractice cases, I only did it with the assistance of an experienced medical malpractice lawyer. Never have I been confronted by this situation. I, quite frankly, had no suspicion whatsoever about this factual scenario. So I can only tell you what I did after I learned of this to try to retrace what I could have done differently had I made the specific effort. And I couldn't find anything. I couldn't find anything. If I was concerned about the statute of limitations, which I knew from the outset, or I believe from the outset, was operable under the minor's tolling statute, I knew we had until she was 20 years old. But as of now, six years later, Mercy Santos is only 12. Had I known or suspected that that might be an issue, I could have accelerated the process. You'll see in the record I obtained an expert report from a dentist who gave the opinion that the dental care in this case was beyond the standard of care. I got that report in July of 2004. I got a report from a family physician who said that the family doctor's care was below the standard of care. That was obtained, I believe, in September of 2004 within the statute, the two-year statute. You had two clients, didn't you? You had the mother and the daughter. No, I saw it only as having the daughter. This was her claim, and that's the claim I was issuing. The mother was only party to the lawsuit in her capacity as the guardian for the daughter. But I did obtain a third expert report, which is the one that gave me causation, that said that the negligence of the other doctors caused the subsequent injury. Had they not acted in that way, it would not have occurred. That was the expert in the actual disease process that occurred in this child, and that report, I believe, was not obtained until February. When I say not obtained, that's when he provided me with his written report. I recall a conversation with him in December of 2004. When's the statute of limitations? Do you need this report sooner? I can probably accelerate it. I said, no, this is a child's case. That's not going to be a problem. Take your time and do it right. Don't try to rush this under the gun. The statute of limitations hasn't run yet. With respect to a minor child in Pennsylvania, that's correct. The state statute of limitations has not run. We'd have another eight years from now. Eight years or six years? Pardon me? Eight years or six years? Two years from the date of her majority. The majority is 18 in Pennsylvania. That's right, so we'd have until age 20. All you want is a chance to prove your case. That's correct. That's correct. You'll see, as you know, there are two conflicting opinions here, one by the Honorable Judge Rambo in this case, another by another respected judge from the Middle District of Pennsylvania, Judge Jones, in an earlier case, which essentially has the same facts. You know, it only occurred to me yesterday, but about, and I'll tell you how long ago it was, the first President Bush was President, I'm pretty sure, and I had a case in which I wrote an opinion and signed it and it's published, in which I think a Navy officer was driving a car, except he was wearing civilian clothes. It was a civilian car, he owned the car, but the suit had to be brought against the government and it wasn't, and then it was dismissed because he was on government business, I guess, and it was an appeal and we affirmed it. And after the appeal, there was a statutory change that you had 30 days to sue from the time of the dismissal and the Solicitor General's office, there was a petition for certiorari, filed a statement with the Supreme Court that said, you know, if this case was remanded, the District Court could reinstate it and dismiss it and then they could bring the suit against the government. And I thought, never in my life have I seen anything more fair. Would you believe the court did do it by a 5-4 vote? And I can never, but that's all reported. Are you familiar with that? Because I can tell you these are two reported cases, the one that originally affirmed the dismissal and then the one that won the remand from the Supreme Court. And I don't know, I thought of it yesterday. I'm not familiar with those cases, Your Honor. Even Judge Rambo, in her opinion, acknowledges, I think she quotes from a Law Review article, she says, the legislative scheme in this case, that is the federally supported Health Centers Assistance Act, often has the unintended consequence of sandbagging the victim by ignorance of the victim's federal court involvement. That's exactly what happened here. And she points out that the defendants are, and that's the case in this case, the defendants are not federal employees in the usual sense. They don't perform traditional government functions. They don't work in the federal building. They are not on the federal payroll. The Department of Health and Human Services does not publish this information. And as we know from the record, when I did obtain all the various medical records, none of the records had any reference whatsoever, any indication whatsoever that this was a federal entity. None of the correspondence between my office and the hospital, when we were obtaining the medical records, identified that information. None of the billings that we received identified the status. What's the office look like? Does it just look like an office? It's just a building in York. It's just a hospital in York with an office in it, just like a regular hospital. There's nothing to give rise to the suspicion that this is something akin to a Veterans Administration or something like that, which obviously is federally related. I would just ask this court to adopt the reasoning of Judge Jones in his opinion. He said equitable tolling would apply in this case because the combination of the existence of the minors tolling statute in Pennsylvania, along with the difficulty in ascertaining the federal status of the employees, creates an extraordinary circumstance which this court has recognized as a basis for tolling. And that if it would not be tolled in this case, it would in effect eliminate or do violence to the Pennsylvania equitable tolling statute, not the minors tolling statute. And this court has held previously in other cases that you should not ignore the validity of Pennsylvania laws with respect to minor children. Thank you very much, Mr. Kells. I may have pleased the court. My name is Connor Kells, and I'm here on behalf of the AFLI, United States of America, in this matter. I just wanted to ask you, are you familiar with what I'm talking about? I mentioned the case I was in, and there was a statute that was passed that you had 30 days after dismissal. I am familiar with cases where Navy and Army members have been involved in automobile accidents and civilian clothing. I'm not aware of the statute that you're referring to, whereby they were going to be given 30 days. After the dismissal, absolutely. What I am aware of is what Congress did in 1988 when it enacted the Westfall Act, and it specifically put in a savings clause for plaintiffs who do timely file, but do so in the wrong form because they are unaware of the federal status. And what that statute says is that if you file within two years, even in the state forum, which is the wrong forum for federal employees, once that case gets removed, even if it only gets removed six months after the two-year statute would otherwise lapse, that plaintiff, because they timely pursued the remedy, even though it was in the wrong forum, will be given 60 days to cure the jurisdictional defect of having failed to file an administrative claim. But this was different because this was 30 days after the dismissal. There is such a statute. I'm not familiar with that one. You know, when I read this case, I'll tell you what was in my mind. I'll be very candid with you. I read the newspapers. I watch the media. And I think to myself, $700 billion goes to people who are greedy, stupid, or worse, and even homeowners who are just ignorant and negligent in their own dealings. But for a person, the government's got hundreds of billions of dollars. But for a person who's actually injured, maybe through negligence, all the government has is technicalities to stop them from recovering. Now, he may not be entitled to recover. That's a different issue on the negligence. You've got to show the negligence. I thought, if this isn't the most unfair thing I have ever seen, I just wondered, couldn't the government look at this and say this is wrong? It's wrong. I mean, this is a lawyer. You can see that this man knows what he's doing. And he's experienced. And he did. And I read it. I shuddered myself. I never ran into it, thank God, the hard way. But it's just not right. He doesn't have any lobbyists. He doesn't have people to fly jets to Washington for him. But this poor group, it's not right. Can't the Solicitor General look at this? There's a difference between right and wrong. This is the second, my judgment. Now, it may be we can't do anything, but somebody can do something. That somebody would be Congress, and Congress enacted this two-year statute and also enacted the federally supported Health Center Assistance Act in response to what it perceived to be a crisis. But then the question becomes, does the concept of equitable tolling, is it barred? We contend that it is, both legally in this particular case, but even on the facts, we do not believe that it will apply. I mean, for example, I take it that York Health Corporation or this clinic has to be certified by the Secretary of HHS, is that correct? There is a deeming process, yes. And what notification, how does the public learn that you go into a clinic and you're not part of the military or anything like that, and you have no clue that it's a government, can claim that it's affiliated with the government. When this happens, when the Secretary of HHS deems it to be federally qualified, what information is given out to the public that that's done? I am not fully certain of all the information. What I can say is that HHS maintains databases that show every single clinic receiving federal grant money under this program. And having that information. Even a website says that they get grant money from the government and a host of others. It sounds like a WHYY commercial. For this program, we're getting grant money from the MacArthur Foundation, the United States government. That doesn't put me on notice that this is, I'm going to have the Federal Toll Claims Act. You judge Greenberg's term, technicality brought against me. To a certain extent, you're correct. But the issue is that if you do think that you have a medical malpractice claim, virtually every single court to have addressed this says that the burden is on the plaintiff to ascertain the legal status, whether that be asking who is your insurance carrier. If you would ask that question, you would have found out that these people are covered by the FTCA and not by some private insurance company. You know, the state of New Jersey, for example, gets money, as all states do, for roads. And yet if you get into an accident and you claim the road was bad and the state's liable, it's a tough case under state law. It's governed by the New Jersey State Torts Claim Act. It's not governed by some federal law. So, I mean, this is not, you know, it doesn't inherit the fact that they get money that you have to proceed this way. Well, these cases are all still governed under the Federal Tort Claims Act. I know that, but, I mean, it's not inherent in the fact that they get money that they have to be. No, but that's where the due diligence requirement. The Gonzales case out of the First Circuit says that blameless ignorance doesn't preclude or relieve a plaintiff of the obligation to make at least a reasonable inquiry into who's going to be legally responsible. Who is your employer? Who is actually going to end up paying this money under respondeat security? Well, who did he sue here? He sued four defendants, four doctors who worked for York Health Corporation, and I believe the corporation itself. Well, generally you'd figure, well, they have malpractice insurance. I don't know. I mean, he claims that there's absolutely, when you walk in, you don't have any concept that this isn't just an ordinary medical facility. It's got nothing to do with the Federal Government at all. When you walk in the door. I mean, you wouldn't have a clue. Going back to my days in private practice, I can't imagine where I would have even thought to inquire that this might be a government-sponsored entity that would be, you'd have to sue within two years under the Federal Claims Act. I mean, the act that makes these particular doctors covered by FTCA as opposed to being privately insured was enacted in 1992 by the first Bush. You know, that's where they're working at York, yet the same doctor, if he had, I don't know if they're full-time, but if he had a private office unrelated to York, wouldn't be covered by the federal law, I gather. It would depend on the circumstances. For example, if you assume too much, it can come back to burn you. For example, in the Sixth Circuit, there's a case called Wittlesley v. United States. In that case, two plaintiffs were treated at a naval hospital. They assumed, because it was a naval hospital, that the doctors that treated them negligently were also naval doctors, and therefore subject to the FTCA. Their failure to actually inquire into their status led them to an unfortunate consequence, which was those people were private civilians and independent contractors subject to Tennessee's one-year statute of limitations for medical malpractice cases and not the two-year statute of limitations that would apply to the FTCA. Well, let me ask you this question. I, unfortunately, have to go from time to time to major university hospitals, and I get, you know, treatments and so forth there. Are those kinds of facilities subject to this law? I mean, once again, this is one of those circumstances-type questions. Let's take Penn. Is Penn subject? Yeah, Penn. That's the one I have to go to. I wouldn't know. See, and this is where it can sometimes get tricky. I mean, even within VA hospitals, some of the doctors there are, in fact, independent contractors. They're not federal employees, and they're not subject to the FTCA. And that's why every court puts the burden on the plaintiff to inquire into the employment status or whoever's going to be legally responsible so that you make sure that you live. But the point that Judge Weinberg is making is that it looks like this experienced plaintiff's counsel did a lot of different things, and we went back and checked, and nobody until four months after the suit was filed came out and said, oh, by the way, this is a Federal Tort Claims Act. Well, he asked for medical records. He did a public records search. When he asked for the medical records, did the hospital tell him at that point that they were on, you know, obviously somebody was investigating a claim against them? When he asked for those medical records, did they say, need to let you know, were federally endowed in part? You're saying the statute puts the burden on the plaintiff and his counsel? That's correct. Not on the defendant? That's correct. There's no allegation here that there was any active concealment on the part of the defendant? None, and the plaintiff has conceived at that point that there was no attempt to mislead them in any way, and they conceived that they never bothered to inquire about the legal status, and they assumed all along that they were dealing with private actors in a state court. When the defendant was responding to what the plaintiff wanted before the suit, did the defendant check with the Federal Government to see if it should do that, the hospital, or just do it? I assume that the custodians of the records just sent the stuff out. I don't know at what point Office of Counsel over there would have gotten involved. It probably was after the suit had been filed because at that point it was the first notice that the doctors were actually going to be sued. And at that point, I think what probably happened was somebody told the U.S. Attorney's Office that these guys needed to be substituted in the case. You have doctors that are associated with more than one hospital, for example, and these very doctors might have been associated with other facilities or had their own offices. Maybe they were not. They wouldn't have been subject to this law if they were treating this patient in another place. Is that legally, at least conceptually, legally possible? I would concede that it's possible. I can't think of the circumstance myself. You don't know the fact. But suppose one of them had an office in his house. When I was a little boy, the doctors often had offices that were part of his house. And he treated patients. He saw patients. So there he might have been just subject to regular state law. And another possibility in some of these rural places, Alaska, Indian tribes, reservations, sometimes the clinics don't wholly advertise themselves out as federal, but because they're receiving the federal money under the public health service, they actually are deemed federal employees because we don't want them to have to pay for their insurance premiums. Otherwise, they wouldn't be able to provide treatment to people who need it in these rural areas. I mean, Congress, when they enacted the FTCA way back in 1946, before the actual bill passed, nine different iterations of 31 contained an equitable provision. Six of them contained a provision for people who had disabilities. None of them were ever adopted at any point in time. Not one of them. Although equitable tolling would be judge-made law anyway. Equitable tolling in this circuit has been recognized as one possibility, absolutely. Although what we would contend is that because Congress has already passed a savings clause for the type of situation that the plaintiff encountered here, that the Supreme Court's logic in TRW v. Andrews says that where Congress enumerates a specific exception, in this case they've done so. You file in the wrong form, but it's still timely. You've got an equitable 60 days to refile. If you were to allow equitable tolling here, legally we think that would render the language superfluous. It's statutory tolling. Right. It would render that particular part of the statute superfluous. You know, under our internal operating procedures, if a panel of this court makes a ruling with a court and bank, obviously, then that will bind subsequent panels no matter what they may think, unless in the meantime there's been a statutory change where the Supreme Court has acted inconsistently with the first opinion. Is there any opinion of this court that compels us to reach a particular result in this case? Otherwise, I've sat on cases where I thought the original opinion maybe isn't what I would have done, but I had no choice. Is there any opinion that does that here? I would say the one that comes closest is this court's opinion in Zeleznik involving the INS. And my time has run out. Go ahead. It was a case in which a plaintiff's son was murdered by someone who had been released from Massachusetts infirmary, a mental clinic. Years later, they discovered that this particular guy who killed their son had attempted to turn himself into Immigration and Nationalization Service, as it was back then. They didn't find this out until 1982. And they pursued the rights diligently, but this court held that the Supreme Court's reasoning in Kubrick precluded tolling the provision, because as of 1974, they were aware of both the injury and the cause. The injury was the death of their son, and the cause was this guy killing him. The fact that they were unable, through any reasonable diligence, to discover INS's actual involvement rendered no difference in this court's opinion. And to quote from it, the fact that a reasonably diligent investigation would not have discovered the defendant's involvement is no longer relevant for the purposes of accrual of the statute of limitations. And in this particular case, I think that's as close as you can get. There isn't one on equitable tolling that I can point you to, because it's never particularly been applied or denied, but we would urge this court to affirm the Santos reasoning as being the most appropriate application of federal law. Thank you very much, Mr. Foster. I will just reiterate, then sit down, that equitable tolling is a product of the courts. It's been recognized in the Third Circuit. I think the Third Circuit has specifically said there are three circumstances that they look to. Those circumstances are not exclusive. I think it's termed primary situations where equitable tolling can be implemented. We respond to the contention that Congress has already provided for an equitable tolling of the statute of limitations in this situation. I don't think they have. I think they have provided a particular set of circumstances for equitable tolling under this statute, but not in the particular situation we're facing here where we have the Pennsylvania minor statute. We call it here statutory tolling. That's correct. So I would submit that this court can reach the conclusion that Judge Jones did, that under these factual scenarios it is an extraordinary circumstance that prevented the plaintiff from asserting her rights. Or I think you could actually go beyond that. I don't think there's anything in Third Circuit prior holdings that would prevent you from making a just result in this case, one that would be just not only for my client who is now 12 years old, but for any other similarly situated individuals in this type of factual circumstance, as Judge Jones did in the Albright case. Your client had what was diagnosed as osteomyelitis? That was the consequence of the retropharyngeal abscess that was undiagnosed by the defendant doctors and dentists. And when osteomyelitis, I'm familiar with it in the legs, I guess because of Mickey Mantle, I think, had it. But when you have it in the neck, is she not able to turn her neck? Well, she has very little. You mean now? Now what has happened is it caused a fusion of two of her vertebrae, which is something that is done in older people when they have a problem with the neck. This was done to a girl who was then 6 years old. So she has a very limited motion in her neck now. We did obtain another report from a treating orthopedic doctor after the suit was initiated to bolster up or to document what her damages are and what her future problems may be. She's going to develop arthritis at the very least at a very early age. Because there is fusion, that creates an additional stress on the vertebrae above and below the fused vertebrae. That may typically result in a breakdown of those discs that require additional fusion. So what you have is it just sort of... That's a possibility as you get older. Pardon me? Because that's a possibility as one gets older. I think it's like... Is there an exchange of medical reports here at all? In other words, do you know what the position of the defendants was through medical experts in this case and so forth? Because you have reports, you know... I have no reports from the defendants. I had to present my reports with the administrative claim that we filed. When this came to light, counsel agreed to let us dismiss this, and we filed an administrative claim, which we did, and then we initiated this lawsuit. But we have never received any expert reports from the defendants. They've received all of ours. And you say you have filed an administrative claim? Procedurally, when we filed this and it was removed to the state court, or I mean to the federal court, counsel said, look, you've got to file an administrative claim in addition to the other issues. So what he said was, look, we'll allow, we'll agree, we'll reach a stipulation where you dismiss this, you then go in to file the administrative claim, if that's denied, which of course it was by inaction, you then reassert the claim in federal court, which we did. It was initially agreed that they would not pursue the statute of limitations defense in one form of the pleading, but that they would put it in new matter, and then they did not put it in new matter, and then they later sought to amend and it was granted to allow them to reassert it in new matter. I didn't understand why that was done that way. I didn't understand it either, but I was just trying to make the best of a bad situation. Thank you very much. Thank you to both counsel for helpful arguments, and we'll take the matter under advisement. Ms. Ross, the court is adjourned until Monday, December 8th. Today at 2, right? Yeah, 2 o'clock. Today at 2 o'clock. I thought you were letting me off.